Retirement System. Mr. Wilkens, we're ready when you are. May it please the Court, my name is Billy Wilkens and at Council table is Beryl Williams and Brian Schombach. Dominion Scanner merger is now completed and has been approved. Dominion now operates in almost 50% of the lower 48 states. This purported class action was initially brought by three former shareholders of Scanner challenging the merger. The Fireman's Fund voluntarily dismissed this complaint against all parties under Rule 41. As I know the Court is well aware, the Class Action Fairness Act was enacted to grant broad federal jurisdiction over class actions, with, as is relevant here, three narrow exceptions. This basic guiding principle was breached by the District Court's remand order, an order that completely ignored the three leading cases from the Second Circuit, which I think is the leading circuit dealing with capital jurisdiction jurisprudence, and instead relied upon four District Court cases. The reasoning of all four was either flawed or nonexistent. The District Court concluded without identifying which exception applies, said, well, at least one applies. And the respondents claim that all three of the exceptions apply. So with the Court's permission, I would like to talk about these three exceptions in the same order in which they appear in the statute. Before you do that, which exception do you think is the strongest for your side? Well, I'd say first, the first exception clearly does not apply. There's not even an argument can be made that it applies. That is a covered security exception. Mm-hmm. That exception ---- I'm sorry, Judge Wilkins, I didn't understand what you just said. I literally couldn't hear the words. The first exception, the covered security exception ---- Clearly does not apply. It clearly does not apply. Yeah. Okay. The Subsection A has a typo in it that said that first 15 U.S.C. 78 should be 77. But nevertheless, if you read all of those statutes set forth in Subsection A together, these subsections limit the exception to one, a security that's traded on a national exchange. And during the sale of that security, it is alleged in the complaint, or a complaint, a misrepresentation, omission, or deceptive conduct occurred. While a scan of stock was traded on the New York Stock Exchange, neither complaint makes any allegation that somehow deceptive conduct, fraud, was involved. As the Second Circuit said in the Appert case, any case to which SLUSA applies, CATH accepts from its gambit. And since SLUSA does not apply to this claim, this exception cannot and does not apply. The second exception found in Subsection B, again, this exception does not apply to the aiding and abetting claim against an external outsider, a non-issuer-like dominion of scanner stock. Now, the Supreme Court in Edgar V. Might Corporation defined and limited the words internal affairs. And here's what the Supreme Court said internal affairs means. It means, and I quote, matters peculiar, that's a key word, to the relationships among or between the corporation and its offices, directors, and shareholders. And the Senate report cites to the Edgar case by name and then quotes this same definition there. Now, peculiar means, in this context, belonging exclusively to. So, internal affairs means matters belonging exclusively to the relationship among and between the corporation, its offices, directors, and its shareholders. By adding an external actor, in this case dominion, by definition, this class action no longer belongs exclusively to the internal relationship between directors and shareholders. Consequently, the internal affairs cannot apply. And the third exception, many times referred to as a securities exception, it was discussed at length by the Second Circuit in the trilogy of cases that are cited in our brief. The first of these cases is the Corterelli case. In that case, a company named Agway was insolvent, yet its offices, in this case Corterelli and a few others, fraudulently sold its worthless certificates to the plaintiffs. And the plaintiffs brought a lawsuit on a New York consumer fraud statute. The case was removed, the district court remanded, and the Second Circuit reversed. Corterelli begins with this recognition. The Second Circuit said the imperfect drafting of the CAFA statute makes it ambiguous, and thus this court must read the words, read the words in context, and then consult with legislative history. This exception is set forth in Dominion's reply brief on page 9, and it's set forth in diagram form, hopefully for ease of explanation. It begins by saying the code section set forth to simply say federal courts shall not have jurisdiction over any class action that solely involves a claim. Solely, of course, is a very important word and a very limiting word. You remember that there are two counts in these two complaints, almost identical. One is the breach of fiduciary duty against Scanner's board members. Did Dominion issue the securities? No, no. Right. Scanner, Scanner issued. Scanner issued. Scanner Securities here. Scanner issued. Scanner Security to its shareholders. Your clients here are just as alleged aider and abetter. That's right. My client was in count two and said, well, you aided and abetted a breach of fiduciary duty. Only in count two. That's correct. So does count one have anything to do with this case, with this appeal? Doesn't have anything to do with Dominion. Doesn't have anything to do with Dominion. But the statute refers to civil action, doesn't it? I'm sorry, Judge. Doesn't the statute refer to a civil action? The Civil Act. It sort of refers to civil action, I think. It does. But anyway, that's all right. So isn't the fact that Dominion didn't issue the securities here, isn't that a point in your favor and a pretty strong point in your favor? Big strong point, Your Honor. Yes, could you explain that further for me, Hal? And in your explanation, maybe you can turn to the third of the Second Circuit trilogies, which also involves a similar situation. But I think that my colleague has got sort of the heart of the matter. I mean, it's interesting to talk about the other exceptions, but C, it seems to me, is the one that maybe we want to focus on here. Well, I'll attempt to do that. Okay. To answer your questions, the Second Circuit said this. If you read in Roman Nume 2, it talks about the claim involves that relates to the rights, the duties, fiduciary duties, and obligation. What does that mean? And the Second Circuit puts the meat on these bones. It said, first, duties define something that's owed by persons. In this case, Scanner's board members owed a duty to its shareholders. Obligations is something the Second Circuit said is set forth in the instruments, in this case, the Scanner stock. And rights are held by security holders to whom those duties and obligations run. The rights of Scanner shareholders flow not from Dominion stock, but from the duties of Scanner's board and from the obligations set forth in Scanner's stock. The Second Circuit considered the words of subsection C in the total context of the statute. And here's what the Second Circuit said. Within the statutory context as a whole, we hold that it was that what this subsection C is doing is talking about claims that are grounded in the terms of the security itself. That is what they said, and you're quoting from Cardelli, right? I am. Okay. So, Blackrock, written by the same Second Circuit judge who you mentioned by name, a very distinguished judge, also wrote Blackrock. And he says, Cardelli explained, quote, that certain duties and obligations, of course, relate to securities, even though they are not rooted in a corporate document, but are instead superimposed by a state's corporation law or common law on the relationships underlying that document. He did. He did. What he's saying is subsection C, if it's going to apply, the source of that law or that claim must come from one or two places. It comes from the terms of the security or a related document like the pooling and servicing agreement. Or it can come from the state corporation law. Or common law. Or common law that imposes duties of those who administer that security. In this case, back again to the SCANA board members. Well, it doesn't exactly say. Well. It says the duties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute. Well, let me ask you this. If there was a claim that your client had, in fact, breached its fiduciary duties to these plaintiffs, you would concede that section C applies, right? If that relationship existed where they could breach a fiduciary duty. But we're talking about standing, not standing. We're talking about getting you into court, not whether, in fact, they can prevail. Right. Okay. So you would concede that that stated an action under CAFA, under the CAFA exception C. The allegation is that your client breached fiduciary duties to the defendants. That's the allegation. That's not the allegation. I know. This is my hypothetical. Oh, if that were the hypothetical. You would concede that that would come under the subsection C exception, right? I think so. Yeah. Well, I mean, you don't have any way out because it says that it applies to duties that are including fiduciary duties. So if they allege that. I know they don't in this case. Another case, hypothetical. They allege that you breached fiduciary duties due to them. It would come under C. To the plaintiff. The plaintiffs allege that your client breached fiduciary duties due to them. Owed to it. Yeah. Yes. I think it would fall under C. That alone is all we're talking about. Right. Now, what if the allegation was that your client conspired to, aided and abetted in breaching fiduciary duties to the plaintiff? Not covered by subsection C. Why? Well, if you look at the trilogy of these three cases read together, what they say is that subsection C applies to a claim that is found in one of two places and only one of two places. And that's what the Second Circuit said. You look at the ---- Yeah, but the aiding and abetting breach of fiduciary duties lies in the same place as breach of fiduciary duties. Aiding and abetting is a separate court action. It is, but ---- External to ---- It certainly has the same source as breach of fiduciary duties. I mean, going back to that language in the Second Circuit case, I can see why you'd say, we don't owe them any fiduciary duty. I understand you say that, but that doesn't help you with respect to this C exception. Well ---- It may well help you on the merits. Well, first we have to start what was alleged in this case. Well, that's right. But, you know, you're entitled to ask your hypothetical. Yes. And I respect your truthful answer to the hypothetical. No, no. I'm trying to be responsive. But, again, I go back to where C, a claim under C, must be found. There are two sources. And two sources only, this trilogy of cases says. And it says it's got to be found grounded in terms of the instrument or grounded in the instrument or found in corporation law or relevant common law that imposes duties on those who administer that. And what about the language in the opening paragraph of 1332D about solely, it has to be solely related to or based on the rights and fiduciary obligations? It's not solely based on any rights or fiduciary obligations. Aiding and abetting is separate and apart from the claim that. Is that under South Carolina law that you're. It is under South Carolina law. That you're telling us about what aiding and abetting means? It has a specific meaning in the federal criminal law that's in the code. Right. But we're applying state law here. You're saying state law. And you said earlier it's a tort in South Carolina. Aiding and abetting is. Common law tort. Common law tort. And that's the law of South Carolina. Element of knowing. A knowing misconduct. So it has to be purposeful and intentional misconduct. Aiding and abetting. And is the aiding and abetting a separate tort? Yes. Absolutely. So it would be independent of a violation of a violation by a principle of fiduciary duty. Absolutely. So it has to be. They're two different things. And that's the way they've alleged, sort of alleged them here. They've got account one, account two. And account two is the aiding and abetting claim. But however they want to phrase it, aiding and abetting on behalf of Dominion. Aiding and abetting a breach of their fiduciary duty is a separate tort action. But the fiduciary duty only, under this complaint, only runs to the Sarna shareholders. That's correct. Doesn't that go to whether, in fact, they can prevail on a cause of action? Well, that's one of the problems I'm having with your argument. I hear your argument. You're right. At trial, they'll have to prove that there was a breach of a fiduciary duty. But it doesn't go to jurisdiction. I mean, you know the difference between jurisdiction and the merits, right? That's right. But just sticking to the jurisdiction, we have to look at what the claim is. And if you read the trilogy cases, this aiding and abetting claim, the second count, did not come from a source that is found in the terms of the security or any corporation law that imposes duties on scanner's board of directors. Or other state law, common law. But I think your time is gone, unless you want to use your rebuttal time. No. Common law that interprets that corporation law. Okay. Thank you. Okay. Maybe you can concentrate on paragraph C, since that's where we, I think, think the rubber meets the road here. Sure. And I think maybe a closer reading of a state of pew, and maybe some of the cases that talk about it is where the answer lies. Now, the exception of the estate of pew case, the Cardelli case. Oh, Cardelli. Okay. Sorry. That's all right. So that case focused only on the second part of that exception C. It didn't talk about fiduciary duties. It focused on the debt instruments and whether or not they gave rise to an independent claim. And I think that the one of the cases that we focus on in our papers made this clear. Well, the two subsequent cases, though, didn't. Blackrock particularly is very clear on this. It's a Second Circuit case written by the same judge, more recent. But maybe you can get to what I think we were talking with your colleague on the other side with at the end of his argument, and that is that the claim here, you're asserting that their client breached a fiduciary duty to you. Or aided and abetting in breaching a fiduciary duty to you. And how can that be so? So the allegation is that the SCANA Board of Directors, which owes fiduciary duties, irrespective of any sort of debt instrument, they owe fiduciary duties, common law, and also pursuant to the terms of the security to the shareholders. The allegation is that Dominion aided and abetted that fiduciary duty. Now, the reason why the fiduciary duty exception applies here, and this wasn't addressed by the estate of Pew, but it wasn't the Blackrock case, because you can't resolve the issue of whether or not there was an aiding and abetting breach of fiduciary duty without first deciding whether or not there was a breach of fiduciary duty. And the CAFA statute and the – And the fiduciary duty here, you agree, runs to the SARNA investors. The SCANA investors. I mispronounced everything, but anyway. Interestingly, in this case – The SCANA investors. That's the fiduciary duty that you claim Dominion violated. But Dominion – the fiduciary duty of the Dominion folks ran to the Dominion investors. As a matter of law, they couldn't breach any fiduciary duty or aid and abet one to your investors unless there was some fraud or something involved. But there has to be the predicate breach of fiduciary duty. Once – so the hypothetical – I don't know how they have a duty at all when they didn't issue the securities. And it's not just duty under C. It's rights, duties, and obligations. So I need to also hear how they have any rights or obligations under C. I think the cases talk about they have a duty to avoid aiding and abetting a breach of fiduciary duty, your typical tort analysis. But I think – But their fiduciary duty runs to the investors of Dominion. This is correct, Your Honor. However – It has to run to the investors of Dominion. Under South Carolina state law, there is a cause of action one for breach of fiduciary duty, and there is a sort of ancillary collateral tort, which would be the aiding and abetting breach of fiduciary duty. So you agree with Mr. Wilkins that the aiding and abetting is a separate independent tort, common law tort under South Carolina law? It sort of – Do you agree with that? It can't exist without – Do you agree with that? Well, I don't agree with that because it's not – You don't? I'm trying to find out. It's not independent. You can't – we don't have a claim against Dominion without a claim against Scana. Unless there is – All right, then. If you don't have a claim against Dominion without a claim against Scana, then what about the opening language of this whole thing that says it must solely be – the opening paragraph talks about solely related to the particular party. Right, right. So you just said that you don't have it solely as related to Dominion. We do have a claim solely that relates to the breach of fiduciary duty. And this is – How? And this is – and I think it's helpful to look at the Senate report in this regard and how courts have analyzed this under the SLUSA exceptions, which CAFA is set up to – the exceptions in the CAFA statute, as the Senate report said, are set up to just reinforce the state versus federal jurisdictional guidelines that SLUSA set up. And what the SLUSA cases talk about is you can't have – and I think maybe that the panel was sort of hinting at this. There's only one claim here, right? There's only one case, one action. And the entire action needs to rise or fall based on the existence of an exception to CAFA jurisdiction. When the courts analyze this – And by the entire action, you're referring to both counts. Right. The entire case. This civil action. They go together. Yes. They're a package deal. Yeah. They are a package deal. We can't have a claim against dominion. We can't have a claim against Scanna without dominion. We can't have a claim against dominion without Scanna. What the courts said in SLUSA in dealing with this is you can only have one action that's removed. And if there is a fiduciary duty claim that's part of that action, then the entire case needs to be remanded. And that is why when Congress enacted CAFA, they made clear, we're not trying to upset any jurisdictional lines with respect to what SLUSA decided. And that's why they crafted the statute to say solely relates to, right? So it encompasses. If the statute, if the exception was only – Your argument just seems like it would encompass everything. It's so broad that there's no exception. How could the exception ever apply? So there's only a few. I mean, there's very few things that relate to a breach of fiduciary duty. One of them is aiding and abetting a breach of fiduciary duty. And it's got to be rights, duties, and obligations. It's not just duty. There's got to be – what are the rights? What are dominion's rights? So this is the issue that was addressed by – You agree it does say rights, duties, and obligations, right, Section C? That's the second part of that exception. And that is what the Cardelli case looked at. It said, okay, these aren't fiduciary duties, so we're going to look to the second part of this statute, the rights and obligations related to the security, right? And the issue in the Cardelli case was this was part of the whole, you know, the countrywide, you know, the mortgage-backed security. So what they decided was, look, your claim doesn't stem from the rights and obligations from the security, right? You're just – you're not trying to enforce the terms of it. You have a claim that arose because you have an issue with it, but that's why it didn't apply. But I think the Blackrock case looked back at the real meat of this exception and how it pertains to the issue before the court, which is the breach of fiduciary duty. And if you look back at the language, the prefiguratory language in the statute solely relates to if Congress intended for the exception to cover only the fiduciary duty and not any ancillary claims related to it, why would it say relates to? It would just say solely breach of fiduciary duty. That's the way the statute would have read. The relates to language would be completely surplusage. So the rates to language, you say, makes it a very broad exception. It doesn't make it broad at all, Your Honor. It doesn't? It's very – if you look back at the history of this, the reason why the fiduciary duty – Well, Mr. Wilkins said it was a very narrow exception. It is very narrow. So you agree with him on that? I agree. It only pertains to claims that relate to – The idea here, this CAFA law, as I understand it, was to get these big class actions into the federal court system. Right. Coupon settlements and multi-district. That's what Congress wanted to do. Right. But CAFA makes clear, the Senate report makes clear, is that this was an intent to remove very local controversies, and that's why you have the internal affairs exceptions. So you're saying this is a local controversy? It is with respect to the breach of fiduciary duty, which is the important part here. So to the extent that we prevail against Dominion aiding and abetting the breach of fiduciary duty, all that is governed by South Carolina law. All that conduct, if it took place, took place in South Carolina. And as the panel, I'm sure, is no doubt aware, there's a lot of local controversy going on with what led to the events and the merger with Dominion. There's the failed nuclear. There's all sorts of regulatory actions within South Carolina revolving the events that led to this. That is exactly the sort of local controversy that CAFA wanted to carve out and have those disputes adjudicated locally. I think one of the problems that we're having is that perhaps we don't think, we're having trouble understanding how you have a claim against them for breach of fiduciary duty. Now, when two corporations merge or one is overtaken by another, are such claims a breach of fiduciary duties by the one corporation, the shareholders of one corporation made against the merged group or against the, do you understand what I'm saying? I think we need a little context because I'm frankly, help me here. You must do this for a living. I can take a step back. So what happens in situations like this, shareholders of SCANA, they are owed fiduciary duties by the board of directors and the corporate managers. And one of those duties, as alleged here, is to avoid acting in their own self-interest and make sure they get the best deal for shareholders. And under tort law in every state in the United States, specifically Delaware, because that's why we have the carve-out, you can't aid and abet a breach of fiduciary duty. This requires knowing participation, requires a lot of things, but the one most important thing that it requires is a breach of fiduciary duty. But is it the other side of the deal is breaching the fiduciary duty? I think that's been sort of the gist of my friend Judge King's questions. Do you understand what I mean? Because each of them has the buyer and the seller here, or the merger, I don't know how this was done, each has their own dog in this race. They're trying to get the best deal for themselves. They are. They have to get the best deal for the Dominion shareholder. Exactly. That's their fiduciary duty. Right. So if the Dominion people and the SCANA people are taking care of their interests, the ones that they owe the duties to, it's an arm's-length transaction. And they negotiated. They came up with an agreement. And you're saying that Dominion snookered your people, I guess. Well, no, the allegation is that Dominion didn't snooker. I'm not sure that gets you anywhere. Well, what is the allegation? The allegation is not that Dominion snookered the SCANA board. The allegation is that Dominion knew that the SCANA board was acting in breach of their fiduciary duties and helped them breach their fiduciary duties. Okay. Are there other cases which make such claims? In terms of case law on this particular CAPA statute? No, not even with CAPA. So here's a great example. There was a case we had in Delaware. It was the rural metro litigation. You don't have to tell us the parties. Sorry? Go ahead. But the primary issue was, was there an aiding and abetting of breach of fiduciary duty? We eventually had a judgment against the Royal Bank of Canada for $100 million because they aided and abetted a breach of fiduciary duty. But in order for us to be able to prevail at trial, we had to demonstrate a predicate breach that was committed by the rural metro board. And that is, that was what the trial was about. That was the other side of the transaction? In other words, it's the same thing here as you have two, is that what you're telling me? You have fiduciary. You have to say yes or no for the. Yes. You have fiduciaries, and they have an obligation to their shareholders. And you have third parties. Yes. It can be arms-length bargaining. It can be sharp elbows. But the allegation is that when the buyer here, Dominion, knows that the SCANA board is breaching its fiduciary duties and provides substantial assistance, knowing participation, then that is what an aiding and abetting of breach of fiduciary duty is. And was that case also attempted to be removed to federal court and then sent back to state court? No. Okay, then that's not the case. No, I was just asking. This is an interesting point. I just wanted to make sure that, no, he said that to begin with. But this is a very interesting point. You don't have any case like this that's been tried to be removed to federal court but sent back. No, no. Right, just this. Well, I mean, there are other cases that are in the briefs, obviously, the Schimmel case, the Fanon case, all of these focused on, which we think are the two crucial points here, which is the internal affairs and the fiduciary duty exception, right? The two reasons why Congress preserved these exceptions were, one, we want states to administer their own internal affairs, which is breach of fiduciary duty, and what it means to aid and abet a breach of fiduciary duty, and secondarily, the breach of fiduciary duty exception itself. SLUSA and CAFA carved out the fiduciary duty exception to allow cases to proceed in state court. It's called the Delaware carve-out. Delaware has the big corporation law. They have all these companies that come in. Cases that are solely related to blah, blah, blah. Can you explain to me again how this one is solely related to Dominion's breach of fiduciary duty when it's, first of all, arguably not their duty, second of all, aiding and abetting somebody else? How can it solely be their duty when they are aiding and abetting somebody else? So it's solely relating to a breach of fiduciary duty, right, which is the language in the statute. The reason why the aiding and abetting claim here is part and parcel of that exception is because the aiding and abetting claim cannot exist unless the predicate breach is first established. And in order for anyone, any court, this court, any court to assess. So it couldn't solely exist. Solely related to. Solely involves a claim that relates to. Yes. And that's the important language, and that's what Dominion wants the court to gloss over. They want the solely language to be the only part of the statute. As opposed to the relates language. Relates to. You mean on the relates language. And you want the related to be the only part we focus on. Not only I, but the Senate report and Congress wanted that to be the language. And the Schumel case talks about specifically why that relates to language is important here, and I would also note, as I mentioned earlier, CAF was meant to preserve SLUSA jurisdiction, and the solely relating to language is to capture the fact that not only breached fiduciary duty claims themselves, but claims that relate to those breached fiduciary duty claims are within the CAF exception. Do you agree that this whole thing turns on the third exception, the fiduciary duty exception? Well, I think the second exception is relevant as well, because in the internal affairs doctrine, this is the, this was. Well, do you give up the first exception? Yes, absolutely. I'm giving it up. But you don't give up the second one. We have focused on the third one. That's the one we have focused on here today. The second and the third. And I would note, I would note just briefly. So the Bucyrus case focused on the first exception. It says not a covered security, so there can't be CAF exception. The State of Pew case focuses on the second part of the third exception. The only cases that address internal affairs and fiduciary duty all land in favor of remand. Okay. Thank you very much. Thank you, Robert. Just a few points I'd like to follow up on. First, I think this is an important decision in which this is the third courts of appeal that have addressed the issue of CAF exception. First, you've heard a lot about the Carnelli case and the two cases that followed it. The Ninth Circuit case, which it's the MC case, which has interpreted its eminence investors, LLP versus Bank of New York, Mellon. We cite it in our brief. And it interprets the Second Circuit decisions and the trilogy that counsel referred to earlier, and it concludes that the CAF exception applies and, therefore, remand was appropriate. And in that case, it distinguishes the Cardinelli case, as Your Honor, I think, as Your Honor described, that Cardinelli was limited because it was a fraud, fraudulent inducement case. The claim was for, effectively, breach of Section 349 of the New York Deceptive Act Practices. And here, in that case, and as a result of that, in the two subsequent cases, Greenwich Financial and also in the BlackRock case, the Second Circuit concluded that remand was appropriate. And in the case of the MC case. What does the Ninth Circuit case involve? The Ninth Circuit case involves claims that relate to there's three claims for breach of for breach of fiduciary duty, one claim for gross negligence, and one claim for injunctive relief. It relates to the abetting claim. There was no aiding and abetting claim in that case. But it describes the trilogy in the Second Circuit and concludes that the courts of appeals should have a similar view, and it also held that remand was appropriate. So this is an important decision for this Court, because this Court would be the first Court to find that under these circumstances in which there is a breach of fiduciary duty claim that has an aiding and abetting piece to it, would not would, in effect, not be subject to remand. Second, I do want to – I think it's important to go back to the language, and I – because it does say solely a claim that's – solely a claim that relates to the fiduciary duties, and there is no way that you can have an aiding and abetting breach of fiduciary duty without a breach of fiduciary duty. And the breach of fiduciary duty – and I think it's described well in – in the – in the Schumel v. Bank Mutual court case, because I think the court – and it's a lower court case in Wisconsin, but the court goes through and describes it very – very clearly, saying that the – The two of these cases from Wisconsin, then, that you all – you all rely on, and you all say one of them overrules the other one. It was decided after the other one, so I – Well, you all said it overruled it. Well, because it – I've never heard of that proposition. Well, maybe it's an – maybe it's an aggressive – That's a new concept of law. You know, you really hurt your credibility to come in there and argue some crazy thing like that. I'm not going to argue that, then. How's that? I'm going to tell you that, from my – from my perspective, the most important thing is that it was decided subsequently. There are three other courts, the Rubin case, the cases that we've cited. And the analysis those courts undertake is persuasive. And I think that's one of the reasons why we've described them and quoted them. The aiding and abetting – I think everybody here would agree the breach of fiduciary duty claim fits in the middle lane of the CAFA exception, the C exception, what we – so it's – clearly, breach of fiduciary is in the middle. The question is, where is aiding and abetting? Is it on the – on the outside of the lane, or is it across the lane? We say it's on the outside of the lane, and I think the analysis that the court in Shumel said also said it's on the – it's still in the lane because you cannot have a breach of fiduciary – an aiding and abetting breach of fiduciary duty without an analysis of the breach – underlying breach of fiduciary duty. And I think it's important to also point out, from a perspective of CAFA and making sure that State court issues get resolved by State courts, there was – it was an – Congress considered the fact that it wanted to stay out of the operation of – of courts, of companies and their internal affairs, and here you have a South Carolina company with – that was incorporated in South Carolina, did business in South Carolina, and South Carolina court, State court, should be entitled to interpret whether or not there was an aiding and abetting claim. And this is not a case where Dominion came and didn't know where it was going. Dominion knew it was buying a South Carolina corporation. It knew it was buying a South Carolina corporation that was incorporated in South Carolina that did its business in South Carolina. So it's not sort of the idea that we need to be – Dominion needs to be in federal court. But Dominion didn't owe any fiduciary duty to anybody at Scanner or whatever it's called. Understood, Your Honor. Well, they owe – Totally. They owe it to their own investors. In agreement. But here, in an aiding and abetting – this is an aiding and abetting breach of fiduciary case. But how can you make a plausible claim that Dominion aided and abetted a fiduciary duty violation as to the investors of your client? Well, you'd have to – going to the merits, I think the allegations relate to the conduct involved between Dominion – But it's a legal impossibility. No. In fact, it's not, Your Honor. There are cases that have held that aiding and abetting a breach of fiduciary duty by the acquirer is – I mean, is certainly one possible cause of action. It is an – it has its difficulties because of the issues Your Honor raised. But nonetheless, in the facts of this case in which there was additional incentives provided, that we can – we have alleged, I believe – I mean, we have alleged an aiding and abetting claim. The defendants could move to dismiss that claim at some point. And whether or not the Court sustains that motion to dismiss, we're just talking about which court we get into. So even though – if it's on its face frivolous, you say that doesn't have anything to do with the jurisdictional question? It's not – I don't think it's frivolous, but if it were – No, but if it is – if it is legally frivolous, does that – how does that impact the jurisdictional question in this appeal or petition for appeal? I would say that it's – as long as it states a claim, if it's a frivolous claim, I think Your Honors can consider it being a frivolous claim. If that's what Your Honors conclude, then you – No, I said if it is – if it – hypothetically, if it is a frivolous claim on the face of it, non-plausible claim, let's say under Twomley, if it's not plausible, legally plausible under Twomley, how does that impact the question of – Jurisdiction. Jurisdiction here, removability here. I think – How does that impact the remand appeal? I think in my – I think a conceivable alternative would be for the Court to remand the case without dominion, dismiss dominion from the case because the Court concludes that it is – that it doesn't have – that the 18 abetting claim doesn't state a case. Well, no, but there's no motion pending under 12b-6. Well, I'm trying to – Nobody's made a motion. Nobody's gotten that far. But I'm trying to – All you did was move to remand, and it's up here on the remand. But isn't that the answer to the question?  If he has to wait for a 12b-6 motion to decide that. Yes, I think you do have to wait for a 12b-6. I thought I said that, but – Well, let me make the 12b-6 motion in the South Carolina court. It has a different standard. Of South Carolina? 12b-6 in South Carolina means something different than 12b-6 in the federal court system. I recognize that, but they're – but South Carolina is the place – they bought a company in South Carolina. They wanted to go to South Carolina to buy it. They're big boys. They have to understand that. My time is up. Thank you, Your Honor. Thank you. The exception begins with the words, solely involves a claim. That relates to. That relates to. And here's what the Second Circuit said the relates to in subsection 3 or C is. This language was intended to differentiate claims either on the terms of the instrument that create and define securities or duties imposed on persons who administer those securities. Differentiate those things from claims arising from independent sources of state law. Aiding and abetting is an independent external source of state law. Well, you and I have both agreed, I think, in the earlier round here, that if in fact you had a breach of fiduciary duty claim, that under South Carolina law, that would be covered here. If there was an allegation in another case against your client. You had a breach of fiduciary duty against. Your client. Yes. That would be covered by subsection C. Okay. The. In the Black Rock case. Our presence explained that section C. Calls out for my jurisdiction claims based on the terms of the instrument. That create and define securities are on duties imposed upon them. While leaving unaffected federal jurisdiction over claims based on the rights arising from independent sources of state law. Now, in the Carrelly case, the independent source of state law was New York consumer fraud statute. In Greenwich, because the sole claim was based on the terms of the pooling agreement, which was part of the security, remand was appropriate. No, they're separate agreements. And that's a very interesting thing about this. Because the violation of the. That was the people that were involved. There were. Holders of a security whose claims arose from an entirely different contractual arrangement. So they're one step removed in the same fashion that you're one step. But they were dealing with the terms of security or the related documents. No, they were dealing with a brief. I think they were dealing with the including the fiduciary duties, a breach of fiduciary duties. That's what they were dealing with. They were dealing in which case we talk much on. I'm talking about both Black Rock and Greenwich. They're both involved. Remember, they had that peculiar. New York scheme. I know you do remember, but I don't mean to interrupt you. You go ahead with your argument, Mr. Wilkins. The relates to in the second in the third section. You know, courts have been dealing with words like concerning or involving or relates to. And what the courts do is to construe and define those terms within the statutory context, within the purpose, the thrust, the reason Congress passed the statute. And the Second Circuit said what we're talking about here in subsection C. And only, there are only two places where the claim, the sole claim can be found. Either in the terms of the instrument like the scan of stock or on the state corporation law and relevant common law that impose duties on those who administer that stock. And that's it. If the right arises from some external, independent, stand-alone cause of action like aiding and abetting, it does not fall with any of these three exceptions. And let me just conclude by talking about this. Each time you've quoted that, you've said relevant common law relating to corporate. And it doesn't say that. It just says or common law. Well, but if you read all the cases, it's not talking about common law in general. It's talking about the law that imposes duties on those who administer securities. And it says that. That's almost a direct quote. It does use loose language sometimes, but it's clearly talking about common law that interprets corporation law that imposes duties on those who administer securities. The purpose of CAFA must end with that. It's to provide broad federal jurisdiction and narrow exceptions. Now, if all a plaintiff has to do, as in this case, bring an action against the scanner's directors and then say, and by the way, Dominion, you aided and abetted, they could just as easily throw an account that says, scanner, you will, directors, you breached you for duties, and we're going to bring in the financial advisor that determines the value of the stocks that he aided and abetted, or banking institution that provides funds, aided and abetted, or an accounting firm, things like that. Surely Congress did not envision that CAFA, after years of working to get it passed, get it enacted, would be able to avoid, a plaintiff would be able to avoid federal jurisdiction by simply saying, oh, and by the way, this accountant aided and abetted, or this bank aided and abetted. In a breach of fiduciary duty. That's right. Aided and abetted fiduciary duty. That's all I have. Thank you, Your Honor. Thank you very much. Thank you for your arguments. Do you want to take a break? No. We will come down and greet the lawyers, and then we'll take a short recess. This honorable court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Stephanie D. Thacker